**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN RESIDENTIAL HONDINGS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JTB INVESTMENTS, LLC, et al., <br><br> Defendants. | Case No.: 20-CV-0483 W (MSB) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND [DOC. 21]** |

Defendants have filed a motion to dismiss the First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b), and a request for judicial notice. Plaintiff opposes the motion and has also filed a request for judicial notice.

The Court decides the matter on the papers submitted and without oral argument. Civ. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS IN PART** Defendants' request for judicial notice [Doc. 21-4] **GRANTS** Plaintiff's request [Doc. 22-1] and **GRANTS** Defendants' motion to dismiss [Doc. 21] without leave to amend.

## I. BACKGROUND

In late 2016, Plaintiff American Residential Holdings, LLC ("ARH"), Defendant RMCL Investments, LLC ("RMCL") and Defendant JTB Investments, LLC ("JTB") agreed to form a business venture to acquire and rent or sell real property for investment purposes. (*First Amended Compl.* ("FAC") [Doc. 14] ¶ 24.) The entity they ultimately formed was SQFT Investments, LLC ("SQFT"). (*Id.*) OHO, Management Inc. ("OHO") was chosen by ARH to manage SQFT. (*Id.* ¶ 35.)

On February 14, 2017, SQFT acquired real property located at 1770-1772 Chalcedony, in San Diego for $850,000 (the "Property"). (*FAC* ¶¶ 13, 26.) The Property consists of two single-family residences on one parcel. (*Id.* ¶ 26.) After purchasing the Property, SQFT began remodeling the residences. (*Id.*) Over the next seven months, SQFT incurred approximately $150,000 in rehabilitation and financing costs. (*Id.* ¶ 28.)

During the summer of 2017, SQFT's principles discussed selling the Property to Defendant Russell Strom, the owner of RMCL. (*FAC* ¶¶ 2, 5, 27.) At the time, Strom was allegedly struggling with his personal financial affairs. (*Id.* ¶ 27.)

On September 15, 2017, SQFT sold the Property to Strom for $685,000, which was well below its market value of $1,400,000, in order to help Strom obtain conventional financing for the purchase. (*FAC* ¶¶ 27, 28.) Strom planned to use one of the houses as his personal residence and the other to produce income "to cover the interest to SQFT till refinanced." (*Id.*) In addition, Strom agreed to: (1) reimburse $60,000 that SQFT paid to resolve a lawsuit involving the Property; (2) pay "approximately $390,000 in price discount, rehabilitation, finance, and litigation costs incurred by SQFT"; and (3) "make payments on the debt owed and would pledge the equity in the [Property] for any of the costs incurred by SQFT." (*Id.* ¶ 30.) The parties also "agreed that Strom could make up the approximately $390,000 in capital expended by the SQFT enterprise through future reimbursement payments to SQFT." (*Id.* ¶ 31.)

According to the FAC, to date "Strom has not made a single payment towards the $390,000.00 capital expended by the SQFT enterprise, and has refused to pay this sum,

despite demands from SQFT's manager, OHO." (*FAC* ¶ 32.) Meanwhile, "[n]umerous liens have been placed on the [Property] which have benefited [Strom], his family, and his agents" to the "detriment of SQFT's security interest in the" Property. (*Id.* ¶ 33.) Strom also "refinanced the property on at least two occasions, presumably to remove cash for his own," as well as for the following additional Defendants: Meghan Casillan Strom, Peter Strom, Susan Strom, Jody Casillan, Ramoncito Casillan, the Strom Living Trust Dated July 29, 2016, and James Armstrong, Esq. (*Id.*)

In addition to converting the equity in the Property for the benefit of Strom and his family's personal use (*FAC* ¶ 34), on approximately December 23, 2019, JTB (which is owned by Defendant Jason Elbers) and RMCL (owned by Strom) passed a resolution purporting to remove OHO as ARH's chosen manager for SQFT and install themselves as co-managers. (*FAC* ¶¶ 35, 36.) The FAC alleges that OHO's removal as manger was done to wrest control of SQFT away from ARH (its majority interest holder) and allow JTB and RMCL to access SQFT's accounts, portray themselves as SQFT's managers to third parties, and unnecessarily stall pending SQFT transactions. (*FAC* ¶¶ 35, 36.) OHO's removal was also done to "avoid making capital contributions to SQFT" and to "shield Strom from liability for reimbursing SQFT for its capital expenditures on the [Property] transfer." (*Id.* ¶¶ 35, 37.) "Moreover, RMCL, JTB, Strom and Elbers have undertaken efforts to reclassify the capital expenses SQFT incurred on the Property as being unrelated to the SQFT enterprise, despite prior acknowledgements to ARH, OHO and SQFT that such expenses were properly attributable to the SQFT enterprise and would ultimately be reimbursed by Strom and secured by an interest in the Property." (*Id.* ¶ 38.)

The day after removing OHO as manager, JTB and RMCL filed a lawsuit in the San Diego Superior Court against OHO, ARH and ARH's principal, Michael Donovan (the "State-Court Action"). (*See Pl's RJN* [Doc. 22-1] Ex. A.) The state-court complaint alleges ARH, Donovan and OHO took "for themselves since January 2017 . . . between $500,000.00 and $1,000,000.00 of SQFT funds and assets properly payable to JTB and

3

RMCL." (*Id.* ¶¶ 12, 13.)  In response, on January 16, 2020, ARH and OHO filed a cross-complaint in the State-Court Action concerning "the internal affairs of the manager and its members" and challenging the removal of OHO as SQFT's manager.  (*Opp'n* [Doc. 22] 3:13–14; *Defs' RJN* [Doc. 21-4].)

On March 13, 2020, ARH filed this lawsuit against JTB, RMCL, Strom, Elbers and the other defendants who allegedly benefitted from Strom refinancing the Property.  (*See Compl.* [Doc. 1].)  The original complaint asserted five state-based causes of action and claimed diversity jurisdiction.  (*Id.* ¶¶ 16–17.)  Defendants filed a motion to dismiss challenging ARH's claim of diversity jurisdiction.  (*See Notice of Mot.* [Doc. 3].)  On May 4, 2020, ARH filed the FAC asserting the same state-based causes of action[1], but now claiming federal-question jurisdiction based on the addition of four federal causes of action: (1) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(b); (2) violation of RICO, 18 U.S.C. § 1962(d); (3) violation of the Wiretap Act, 18 U.S.C. § 2520 *et sq.*; and (4) violation of the Stored Communication Act, 18 U.S.C. § 2701.  (*See FAC.*)  The latter two federal causes of action are based on the allegation that "[d]uring the course of various litigation matters between Plaintiff, its subsidiaries and agents and the Defendants, it has become apparent that the Defendants have been 'hacking' the emails of the principal of Plaintiff, Michael Donovan" (*id.* ¶ 97) in order to "gain advantage in the various litigation cases between the parties . . . ." (*id.* ¶ 105).  The FAC further alleges that Defendants' conduct has harmed SQFT by delaying its receipt of funds needed for day-to-day operations.  (*Id.* ¶ 36.)

Defendants have again filed a motion to dismiss raising a number of different grounds, including lack of standing and failure to state facts supporting the federal causes of action.  Because the Court agrees with these two arguments, it need not resolve the other issues raised in the motion.

---

[1] The FAC caption also includes a tenth cause of action for common-law fraud, which is not set forth in the body of the FAC.

## II. LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See N. Star Int'l v. Ariz. Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. Id. The court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court has explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1964-65. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, courts may consider documents specifically identified in the complaint whose authenticity is not questioned by parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds). Moreover, courts may consider the full text of those documents, even when the complaint quotes only selected portions. Id. The court may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

### III. DISCUSSION

#### A. Request for Judicial Notice

Federal Rule of Civil Procedure 201 permits a court to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Under this rule, a court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

Defendants request judicial notice of eight documents (Exhibits 1–7, 12) filed in the State-Court Action and this case, and Plaintiff requests judicial notice of filings in another related state-court action (Exhibits A, B). Judicial notice of these documents is appropriate. See NuCal Food, Inc. v. Quality Egg LLC, 887 F.Supp.2d 977, 984 (E.D. Cal. 2012) ("Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings."). Defendants also request judicial notice of grant deeds filed with the San Diego County Recorder (Exhibits 8, 9), and Plaintiff requests judicial notice of the liens filed in the same office. Judicial notice of these documents is also appropriate. Haye v. United States, 461 F.Supp. 1168, 1174 (C.D.Cal. 1978) (taking judicial notice of deeds recorded with the Los Angeles County Index).[2]

---

[2] Defendants also request the Court consider the Purchase Agreement for the Property and SQFT's Operating Agreement under the incorporation-by-reference doctrine. In Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018), the Ninth Circuit reiterated that the doctrine applies where the plaintiff refers "extensively to the document or the document forms the basis of the plaintiff's claims." It is not entirely clear whether ARH's claims in this case are 'based' on the Operating Agreement. Regardless, because neither document is necessary for the evaluation of standing or the federal causes of action, the Court denies the request for these documents.

### B.     Lack of Standing

Defendants contend ARH lacks standing because the alleged injuries were to SQFT and Donovan, not ARH.  (*P&A* [Doc. 21-1] 9:6–12:3.)

Injury for Article III standing requires plaintiff to demonstrate three elements: (1) injury in fact to a legally protected interest that is both concrete and particularized, and actual and imminent; (2) a causal connection between the injury on wrongful conduct; and (3) redressability.  San Diego Cty. Gun Rights Comm. V. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996.)  Plaintiff bears the burden of establishing standing to sue.  Id.

Here, none of the causes of action allege an injury to ARH that is sufficient for Article III standing.  The first cause of action alleges a breach of the agreement between SQFT and Strom for the sale of the Property.  (*FAC* ¶¶ 42–47.)  The FAC alleges the agreement was between SQFT, on the one hand, and Strom and RMCL, on the other.  (*Id.* ¶ 47.)  Because ARH was not a party the agreement, it could not suffer injury from the alleged breach.

The third, fourth, fifth, sixth, and seventh causes of action are all based on Defendants' post-sale transfers or refinances designed to convert the equity in the Property that was pledged to SQFT.  (*FAC* ¶¶ 63, 64, 69, 71, 76, 83, 91, 92.)  According to the FAC, this conduct hindered, delayed or defrauded SQFT from recovering its capital loss on the Property.  While these allegations assert a direct injury to SQFT, any injury to ARH was incidental and not sufficient to confer standing to ARH to pursue the claims.  See Schuster v. Gardner, 127 Cal.App.4th 305, 312–313 (2005).

Similarly, the second cause of action is based on fiduciary duties JTB and RMCL owed to SQFT.  (*Id.* ¶¶ 50, 52.)  Similar to the third through seventh causes of action, ARH's alleged injury was the result of its status as the majority owner and was, therefore, incidental.

In its opposition, ARH does not dispute that it lacks standing to pursue the above causes of action, but instead explains that "the claim is intended to be brought as a derivative action on behalf of SQFT." (*Opp'n* [Doc. 22] 4:16–17.)  ARH also

7

acknowledges that "the derivative allegations in the complaint may not be as clear as required . . . ." (*Id.* 4:17–18.) ARH is correct. The FAC does not indicate that ARH is pursuing the case as a derivative action and SQFT is not named as a nominal defendant. Moreover, ARH failed to comply with California Corporations Code § 17501(a)(2) for pleading a derivative action. Because the first through seventh causes of action allege a direct injury to SQFT, not ARH, it does not have standing to pursue those claims.

Finally, the eighth and ninth causes of action are based on "'hacking" Michael Donovan's emails. (*Id.* ¶¶ 97, 105.) Any injury was, therefore, to Donovan, not ARH. ARH does not argue otherwise in its opposition. Accordingly, ARH does not have standing to pursue this claim.

### C. <u>Failure to state a RICO claim</u>

Although this Court has determined that ARH lacks standing, it will also address Defendants' argument that the FAC fails to state a cause of action for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Evaluation of this argument is relevant to the determination of whether ARH should be granted leave to amend the FAC.

The sixth cause of action asserts a violation of RICO, 18 U.S.C. § 1962(b). This section provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The seventh cause of action asserts a violation of section 1962(d), which essentially alleges a conspiracy to violate section 1962(b).

Defendants argue both RICO causes of action fail because, among other things, the FAC fails to allege an impact on interstate commerce. (*P&A* 15:6–7, 18:12–15.) In response, ARH contends that because "Plaintiff alleges that the wrongful liens were acquired by persons residing outside of California, specifically New Jersey[,]" the FAC

8

has sufficiently alleged "interstate commerce was involved." (*Opp'n* 811–13.) The Court disagrees with ARH.

"To prevail on a claim under [RICO], plaintiffs must demonstrate that the enterprise which is involved in or benefits from the racketeering activity is one engaged in, or having an effect on, interstate commerce." Musick v. Burke, 913 F.3d 1390, 1398 (9th Cir. 1990). Incidental contacts with interstate commerce do not suffice to confer federal jurisdiction. United States v. Barone, 39 F.3d 981, 986 (9th Cir. 1994); Musick, 913 F.2d at 1398 (holding the interstate nexus requirement is not satisfied "where local activities have incidental effects on interstate commerce").

Here, the RICO causes of action are based on the "recording of fraudulent liens against" the Property in San Diego. (*FAC* ¶¶ 83, 91–93; *Opp'n* 8:11–13.) The liens were all recorded in San Diego with the San Diego County Recorder. (*See Pl's RJN* Ex. C.) These allegations establish that the alleged RICO enterprise's "activity" took place entirely in San Diego and the enterprise was not engaged in interstate commerce.

Significantly, Defendants cite no authority for the proposition that the out-of-state residence of two of the seven individual defendants satisfies the interstate-commerce requirement. Nor has this Court found any cases supporting that position. The Court, therefore, finds the FAC fails to plead RICO causes of action.

### D. **Leave to Amend**

ARH requests leave to amend the FAC. Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave when justice so requires." However, denying leave to amend is appropriate where such leave to amend would be futile. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996); Plumeau v. Sch. Dist. No. 40 Cty. Of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997). For the following reasons, the Court finds it would be futile to grant ARH leave to amend.

ARH could not amend the FAC to state any of the four federal causes of action. ARH does not have standing to pursue the Wiretap and Stored Communications Act

9

violations. Those claims belong to Donovan, who is not a party to this case. With regard to the RICO claims, in addition to ARH's lack of standing, leave to amend would also be futile because the alleged enterprise's "activities" occurred exclusively in San Diego.

Because ARH cannot amend the FAC to state a federal claim, there are two issues relevant to whether to grant ARH leave to amend the state claims. The first issue is whether it would be futile. Arguably, ARH could address its lack of standing by amending the FAC to clarify ARH is pursuing this case as a derivative action and naming SQFT as a nominal defendant. The second and more important issue is whether this Court should exercise supplemental jurisdiction over the derivative state claims.

Under 28 U.S.C. § 1367(c), a federal court may decline to exercise supplemental jurisdiction under any of the following circumstances: (1) the state law claim involves a novel or complex issue of state law; (2) the state law claim substantially predominates over the federal claim; (3) the federal claim has been dismissed; and (4) exceptional circumstances. 28 U.S.C. § 1367(c). Here, the Court would decline to exercise supplemental jurisdiction for two reasons. First, the federal claims have been dismissed and leave to amend those claims would be futile. Second, even if the federal claims were not dismissed, the exercise of supplemental jurisdiction is not warranted because the state-law claims clearly predominate.

The gravamen of this case concerns the breach of the obligations surrounding the sale of the Property. ARH concedes as much in the opposition: "this litigation arises out of a real property transaction by and between SQFT and Russel Strom, his breach of the agreement related to that transaction, and his and his cohorts' subsequent wrongful actions to defraud SQFT." (*Opp'n* 3:14–17.) Significantly, two of the four federal claims—the Wiretap Act and Stored Communications Act claims—have nothing to do with this conduct, and the RICO claims deal with only one aspect of the alleged effort to defraud SQFT: the filing of the liens. In contrast, the state-based claims deal with all of Defendants' wrongful conduct consisting of: Strom's failure to reimburse SQFT $343,000 in capital expenses (*FAC* ¶ 47); Strom's failure to protect SQFT's interest in

the Property's equity (*id.* ¶ 48); JTB's and RCML's breach of fiduciary duties to SQFT by wrongfully seizing control of the company, representing SQFT in transactions with third parties, accessing SQFT's accounts, unnecessarily stalling pending transactions, avoiding making capital contributions, shielding Strom from liability for reimbursing SQFT for its capital expenditures for the Property, reclassifying capital expenses SQFT incurred on the Property, and conspiring to "rob SQFT of assets and income" (*id.* ¶¶ 35–38, 52); and refinancing and filing liens against the Property (*id.* ¶¶ 60, 61, 69).

Because the exercise of supplemental jurisdiction over the state-claims is not warranted in this case, the Court will deny ARH leave to amend the FAC.

## IV. CONCLUSION & ORDER

For the reasons set forth above, the Court **GRANTS IN PART** Defendants' request for judicial notice [Doc. 21-4], **GRANTS** Plaintiff's request for judicial notice [Doc. 22-1] and **GRANTS** Defendants' motion to dismiss [Doc. 21] **WITHOUT LEAVE TO AMEND**. The dismissal is also **WITHOUT PREJUDICE** so that ARH may pursue the state claims in a state-court derivative action.

**IT IS SO ORDERED.**

Dated: December 22, 2020

Hon. Thomas J. Whelan
United States District Judge